# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| WRM AMERICA INDEMNITY COMPANY, INC., as subrogee of SAINT MARY-OF-THE-WOODS COLLEGE, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Cause No. 2:12-cv-73-WTL-WGH |
| SIEMENS BUILDING TECHNOLOGIES, INC., also known as SIEMENS INDUSTRY, INC., ) ) ) ) | |
| Defendant. ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the motion for summary judgment filed by Defendant Siemens Building Technologies, also known as Siemens Industry, Inc. (dkt. no. 77). The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons set forth below.[1]

## I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on

---

[1] In its response, WRM suggests that the Court should enter partial summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56(f). The Court does not find summary judgment appropriate for WRM and thus declines to grant its request.

its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.   BACKGROUND

The relevant facts of record, viewed in the light most favorable to WRM, the non-moving party, are as follow.

After working together on several projects, Saint Mary-of-the-Woods College and Siemans entered into a written agreement by which Siemans was to "provide [a] new fire alarm system at LaFer Hall [and] Guerin Hall, and network existing fire systems in other buildings on campus through LeFer Hall." WRM's Ex. I, Dkt. No. 108-4, p. 4.  At the time, LeFer Hall and Guerin Hall had working but outdated Simplex brand fire protection systems, and Guerin Hall did not have any smoke detectors in its basement.

The agreement was executed by both parties on June 25, 2004, and was accompanied by a proposal letter further detailing the scope of work.[2] The proposal letter stated as follows:

---

[2] Siemans argues that the proposal letter was not a part of the final written agreement. Siemans' Reply at 3. It is clear, however, that Siemans faxed the proposal letter and the terms and conditions to St. Mary's as one contract package. WRM's Ex. I (see transmittal sheet and fax coding and page numbers). Further, the terms and conditions state that "[t]he portions of each proposal or agreement relating to 'Scope of Work' or 'Proposed Solution' . . . , together with these Terms and Conditions, are collectively referred to as the 'Agreement.'" Thus, the final written agreement (hereafter referred to as the "Contract") includes the proposal letter, the signature page, and the terms and conditions. The Court does note that WRM originally attached only the signature page and the terms and conditions to its complaint. Siemens suggests that, because of this, WRM may not now argue that the contract also includes the proposal letter. *See* Siemens' Reply at 3. Siemens, however, cites nothing to support this argument. The argument is thus without merit.

> Siemans is pleased to present our proposal to provide a new Siemens MXL Fire Alarm System for LeFer Hall and network the existing fire alarm systems on campus at the following buildings: Music Conservatory, LeFer Hall, Hulman Hull, Library, Guest House and Guerin Hall. LeFer Hall will serve as the central network hub. . . .
>
> The following scope of work [will] be provided for the fire alarm system replacement at LeFer Hall and Guerin Hall:
>
> - Provide and install new addressable smoke detectors. One detector to be installed in each dorm room.
> - Provide and install manual pull stations at appropriate locations.
> - Provide and install beam detectors in appropriate locations.
> - Existing sprinkler flows and tamper switches shall be monitored with addressable monitor modules.
> - New wire shall be installed [throughout] the building to provide new detection and notification circuits.
> - ADA criteria to be utilized in placement of notification appliances.
> - Test and certify the system.
> - Project manage the installation of the system.
> - Onsite training for SMWC on fire system.
> - One-year parts and labor warranty.

*Id.* at p. 2.

Several years later, on August 31, 2012, a fire started in the basement of Guerin Hall, and, although no one was injured, the fire caused nearly $900,000 in damage to the one hundred-year-old building. After the fire, St. Mary's discovered that Siemans had not installed any smoke or fire detectors in the basement of Guerin Hall.

St. Mary's insurer, WRM, filed the instant subrogation action against Siemens on January 19, 2012.[3] WRM alleges that Siemens breached its contract with St. Mary's "by designing and installing a fire and smoke detection system that did not comply with applicable standards of

---

[3] WRM's complaint against Siemens initially alleged breach of contract, breach of express warranty, breach of implied warranty, negligence, and gross negligence. Only WRM's breach of contract claim remains. The other claims were dismissed by the Court as a matter of law on December 5, 2012 (dkt. no. 32).

care and the Agreement," and "by installing a paging system that failed when the fire was ultimately detected." Compl. at ¶¶ 29-30.

### III. DISCUSSION

This case ultimately boils down to whether the Contract required Siemens to install smoke and/or fire detectors in the basement of Guerin Hall. WRM argues that St. Mary's hired Siemens "to engineer, design, select, install, program and certify a new fire and smoke detection system for Saint Mary-of-the-Woods." WRM's Resp. at 2. This included the installation of smoke detectors in the basement of Guerin Hall. Siemens, however, argues that it was not required to install a smoke detection system in the basement of Guerin Hall because "[t]he scope of work [did] not reference any work to be performed in the basement[, and t]here were never any change orders related to the installation of a fire or smoke detection system in the basement of Guerin Hall." Siemens' Br. at 4 (citations to record omitted). Siemens further argues that "[b]ecause Siemens contracted to replace an existing system – one which included no detectors in the basement – there is no basis for plaintiff's allegation that Siemens breached the contract by failing to design a system to include coverage in additional areas (such as the basement)." *Id.* at 12. The Court, however, finds that the Contract is ambiguous as to whether Siemens was required to install smoke detectors in the basement of Guerin Hall. Because extrinsic evidence is necessary to interpret the contract, summary judgment is inappropriate on this issue.

Under Illinois law,[4] "an agreement when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (citation

---

[4] Illinois law applies to this case pursuant to a choice-of-law provision in the Contract.

4

and quotations omitted). "If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Id.* (citing *Farm Credit Bank v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991)). "If, however, the trial court finds that the language of the contract is susceptible to more than one meaning, then an ambiguity is present. . . . Only then may parol evidence be admitted to aid the trier of fact in resolving the ambiguity." *Id.* (citing *Whitlock*, 581 N.E.2d at 667) (citation omitted). "[S]ummary judgment should not be granted where extrinsic evidence is needed to ascertain the meaning of ambiguous contract language." *St. Paul Mercury Ins. v. Aargus Sec. Sys., Inc.*, 2 N.E.2d 458, 478 (Ill. Ct. App. 2013) (citing *William Blair & Co. v. FI Liquidation Corp.*, 830 N.E.2d 760, 770-71 (2005)); *A. Epstein & Sons Int'l, Inc. v. Eppstein Uhen Architects, Inc.*, 945 N.E.2d 18, 24 (Ill. Ct. App. 2011) ("Summary judgment is not proper where a purported contract contains ambiguous terms, which require admission of extrinsic evidence to interpret them.") (citation omitted).

The Contract in this case did not mention the basement of Guerin Hall—it did not provide for the installation of smoke detectors in the basement, but it also did not specifically exclude the installation of smoke detectors in the basement. As noted above, the Contract stated that Siemens agreed to "provide [a] new fire alarm system at LaFer Hall [and] Guerin Hall, and network existing fire systems in other buildings on campus through LeFer Hall." WRM's Ex. I, p. 4. This suggests, as WRM alleges, that Siemens was required to install a brand new modern system *throughout* Guerin Hall (which included the basement)—a system that was compliant with industry standards. However, on another page, the Contract stated that the project would be a "fire alarm system replacement at LeFer Hall and Guerin Hall," and Siemens would "[p]rovide and install new addressable smoke detectors[, o]ne detector to be installed in each dorm room."

5

*Id.* at p. 2. In light of *Thompson v. Gordon*, 948 N.E.2d 39 (Ill. 2011) (holding that the term "replacement" in a contract did not mean "improvement"), this suggests, as Siemens alleges, that Siemens was simply required to replace the existing Simplex detectors with new Siemens detectors, and it was not required to install new smoke detectors in any other location. *See* Siemens' Reply at 5 ("The Work at Guerin Hall was a straight one-for-one replacement of the existing system.").[5]

Based on the foregoing, when the Contract is viewed as a whole, the terms "new fire alarm system" and "replacement [system]" are in conflict as they relate to the basement of Guerin Hall, and the terms are susceptible to more than one meaning. Thus, the Contract is ambiguous and parol evidence must be considered in order to resolve the ambiguity. Accordingly, Siemens' is not entitled to summary judgment on this issue.

WRM also alleges that Siemens is liable under a breach of contract theory because the paging system did not work properly on the day of the fire. According to WRM,

> [t]he paging system portion of the Siemen[s'] fire alarm system . . . failed to operate. The fire alarm system designed and installed by Siemens was not arranged to automatically notify the local fire department. This delay in reporting the fire threatened the lives of the building occupants and resulted in additional smoke and fire damage.

Compl. at ¶ 16. WRM further alleges that the paging system "failed and did not alert security staff at St. Mary's" on the day of the fire. WRM's Resp. at 15.

The evidence is clear that St. Mary's "**specifically directed** Siemens to program the system *not* to contact the fire department directly due to a concern over false alarms." Siemens'

---

[5] The Court notes that this interpretation is not entirely practical. It would seem unnecessary for St. Mary's to spend $219,000 to perform a "one-for-one" replacement of an already working system. Additionally, the evidence indicates that Siemens installed new smoke detectors in various locations in Guerin Hall where detectors did not previously exist.

6

Br. at 5 (emphasis in original). Accordingly, Siemens did not breach the contract with regard to this alleged "failure."

As to the internal paging system, the evidence is a little less clear. According to St. Mary's Security Director, Charles Rairdon, he received a call from Gordon Afdahl, the Vice President for Finance & Administration, regarding the fire in Guerin Hall. Prior to Afdahl's call, he did not receive a page through the Siemens' system. At his deposition, however, Rairdon testified as follows:

> I'm not sure that the alarm system didn't function properly. There were no smoke detectors in the basement, and I don't know when the fire system went off, and I know that there is a delay in the paging system, so the alarm could have been going off for awhile before I ever received the page, so am I sure it didn't function the way it was designed, no I'm not.

Siemens' Ex. G, Dkt. No. 78-7, p. 43. WRM provides no further evidence on this issue—there is no evidence in the record indicating how WRM believes the paging system should have operated, when security personnel should have received the page, or the timing of Afdahl's call and Rairdon's arrival at the fire. Thus, there is no evidence from which a trier of fact could determine that the paging system did not function properly on the day of the fire. *See Johnson v. Cambridge*, 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (quoting *Schact v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Accordingly, Siemens is entitled to summary judgment on this issue.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment (dkt. no. 77) is **GRANTED IN PART AND DENIED IN PART**. The trial and final pretrial conference will be reset under separate order.

SO ORDERED: 06/16/2014

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.