# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| WRM AMERICA INDEMNITY COMPANY, INC., as subrogee of SAINT MARY-OF-THE-WOODS COLLEGE, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Cause No. 2:12-cv-73-WTL-WGH<br>) |
| SIEMENS BUILDING TECHNOLOGIES, INC., also known as SIEMENS INDUSTRY, INC., | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## ENTRY ON DEFENDANT'S MOTION TO STRIKE AND *DAUBERT* MOTION

This cause is before the Court on the Defendant's motion to strike the entire supplemental report of Carl Baldassarra, the Plaintiff's proposed expert (Dkt. No. 163), and the Defendant's motion to bar Baldassarra from testifying regarding a particular opinion expressed in his original report pursuant to Federal Rule of Civil Procedure 702 and *Daubert* (Dkt. No. 164). The motions are fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion to strike, and **DENIES** the *Daubert* motion, for the reasons and to the extent set forth below.

### I.    GENERAL BACKGROUND

The Plaintiff, WRM America Indemnity Company, Inc. ("WRM"), as subrogee of Saint Mary-of-the-Woods College ("St. Mary's"), filed the instant suit against Siemens Building Technologies, Inc., also known as Siemens Industry, Inc. ("Siemens"), after a fire caused nearly $900,000 in damage to Guerin Hall, a 100-year-old building on St. Mary's campus. Siemens had previously installed a new fire alarm/smoke detection system in Guerin Hall; however, it did not

install any smoke or fire detectors in the basement of the building where the fire originated. Only WRM's breach of contract claim, and specifically, whether Siemens breached its contract with St. Mary's when it failed to install smoke and/or fire detectors in the basement of Guerin Hall, remains for trial.

## II.    MOTION TO STRIKE

### A. Background

On April 30, 2013, WRM filed Baldassarra's original report with the Court (hereafter the "First Report"). Dkt. No. 45-1. Baldassarra's First Report contained, in relevant part, the following general opinions:

- Guerin Hall is a mixed use building.

- The fire alarm system installed by Siemens was an optional system, and therefore, subject to the requirements for new construction to the extent practicable and as a matter of good fire protection practice.

- Pursuant to the National Fire Alarm Code, and specifically NFPA 72, a smoke detection system should have been installed in the basement of Guerin Hall.

- Because fire detection was not provided in the basement of Guerin Hall, the delay in detection caused a delay in notifying the responsible persons from notifying the fire department.

- The delays were directly related as causal factors of the extent of damage that resulted from the fire.

- The failure of Siemens to install a system in the basement is a violation of good industry practice and did not fulfill Siemen's obligations to St. Mary's under its proposal.

- Had plans for the system been submitted to local authorities, it is possible that the omission of the smoke detectors in the basement would have been raised.

- The plans prepared by Siemens were not accurate.

*See id.*

On July 15, 2013, Siemens disclosed the report of its retained expert, Don Hoffman ("Hoffman's Report"). Dkt. No. 60-2.

On February 27, 2014, Baldassarra was deposed. During the deposition, WRM's counsel elicited several opinions that Siemens claims were not discussed in his First Report or provided in a timely rebuttal report. They include the following:

- Disagreements with some of Hoffman's opinions.

- Opinions about smoke detector sensitivities and features.

- Timing of fires undetected by smoke detectors.

- Siemens' plans did not match the actual building. This did not comply with the applicable standard of care.

- The individual who designed the system should have been familiar with the building.

- The installation of horns and strobes in the basement of Guerin Hall, but not detectors, was puzzling and did not comply with industry standards.

- Siemens should have hired an engineer to determine the proper placement of smoke detectors and failed to employ proper engineering judgment.

- Siemens should not have proceeded with the work because Saint Mary's did not obtain the necessary permits.

- Siemens' drawings were inaccurate.

- Siemens did not properly manage the project.

- Siemens should have notified Saint Mary's that detectors would not be installed in the basement.

*See* Dkt. No. 163-6. Siemens' counsel objected to each opinion on the basis that it was not previously disclosed.

On March 11, 2014, WRM filed a "Notice of Supplementation of Expert Report," attempting to supplement Baldassarra's First Report with his deposition testimony. Dkt. No. 121.

On March 31, 2014, WRM's counsel informed Siemens that WRM intended to serve a revised expert report. That same day, Siemens filed a motion for protective order seeking to bar any improper and untimely opinions disclosed by WRM. On May 9, 2014, Magistrate Judge Hussman held a hearing on Siemens' motion. Magistrate Judge Hussman granted in part and denied in part the motion, and ordered as follows:

> WRM may submit a supplemental report from Dr. Baldassarra. However, any new or changed opinions in the supplemental report must contain specific reference to the particular new evidence received after the rendering of the expert's original report. That is to say, any new or changed opinion must specifically reference the items of discovery received after the first opinion which form the basis for the new or changed opinion.
>
> In the event WRM's supplemental expert report wishes to address Siemens' expert report, those opinions must be limited to the basis upon which Siemens' expert has inadequately reached his opinion. WRM's expert's supplemental opinions may not be grounded merely upon Siemens' own expert opinions. Opinions concerning the inadequacy of Siemens' expert should be contained in a separate portion of the opinion for purposes of clarity.

Dkt. No. 132 at 1-2. Siemens did not file an objection to Magistrate Judge Hussman's order.

On October 6, 2014, after several extensions, WRM filed Baldassarra's supplemental report (hereafter the "Supplemental Report"). Dkt. No. 156-1. The Supplemental Report contains the following general opinions and sub-opinions:

- Opinion 1: Fire Department Notification Time
    - The call to Mr. Rairdon from Mr. Afdahl regarding the fire occurred approximately between 12:20 PM to 12:23 PM, twenty-five to twenty-eight minutes later than originally reported.

- Opinion 2: Paging System Operability
    - It is likely that the paging system was inoperable at the time of the fire.

- Opinion 3: Failure to Obtain a Construction Permit
    - Siemens not obtaining a permit was a deviation from the scope of work for prior Siemens projects with St. Mary's.
    - Because St. Mary's was an unsophisticated customer, the requirement that it obtain the permits for this project would not have been apparent to St. Mary's.

4

- o   Submittal of the drawings to the local authorities with an application for a permit would have precluded the design deficiencies with the project.

- Opinion 4: Failure to Prepare Accurate Drawings by Licensed Design Professionals
    - o   The project was poorly managed, with inadequate supervision, communication, and review.
    - o   The failure to have accurate drawings prepared by a licensed design professional and to have those drawings submitted to the stakeholders resulted in lost opportunities to identify problems with the plans.

- Opinion 5: Smoke Detector Performance
    - o   A smoke detection system in the basement of Guerin Hall would have likely detected a fire within four minutes of ignition.

*See id.* The Supplemental Report also contained various disagreements with Hoffman's Report.

### B. Discussion

Siemens now moves the Court to strike the entire Supplemental Report because "all of the opinions" expressed in the report "are improper or untimely disclosed." Siemens' Mot. to Strike at 8. Siemens argues that WRM failed to meet the various deadlines for supplemental and rebuttal reports under Federal Rule of Civil Procedure 26. It is clear, however, that these arguments were contemplated by the Magistrate Judge when he granted in part and denied in part Siemens' motion for protective order, *see, e.g.*, Dkt. No. 135, and, as noted, Siemens did not object to the Magistrate Judge's order. The Court will not rehash the timeliness arguments.

The Court will now address each opinion contained in the Supplemental Report in turn.

*1. Fire Department Notification Time*

Baldassarra's First Report stated that St. Mary's Security Director, Charles Rairdon, received a call from Gordon Afdahl, the Vice President for Finance & Administration, notifying him of the fire at 11:55 a.m. His Supplemental Report corrects this opinion and states that the call "occurred approximately between 12:20 PM to 12:23 PM." Dkt. no. 156-1 at 5. According to the Supplemental Report, Baldassarra corrected this opinion after he reviewed the second

5

deposition of Gordon Afdahl, which occurred on May 24, 2013, a month after he authored his First Report. It is also unlikely that Siemens' would be prejudiced by this correction. For these reasons, the Court will not strike this opinion.

*2. Paging System Operability*

Baldassarra opined in his Supplemental Report that the fire alarm system's automatic paging system was likely inoperable at the time of the fire. This opinion, however, relates to a claim no longer at issue in this case. The Court previously entered summary judgment in Siemens' favor on WRM's claim that the internal paging system did not operate properly on the day of the fire. The Court noted as follows in its entry on the motion for summary judgment:

> According to . . . Charles Rairdon, he received a call from Gordon Afdahl . . . regarding the fire in Guerin Hall. Prior to Afdahl's call, he did not receive a page through the Siemens system. At his deposition, however, Rairdon testified as follows:
>
>> I'm not sure that the alarm system didn't function properly. There were no smoke detectors in the basement, and I don't know when the fire system went off, and I know that there is a delay in the paging system, so the alarm could have been going off for awhile before I ever received the page, so am I sure it didn't function the way it was designed, no I'm not.
>
> Siemens' Ex. G, Dkt. No. 78-7, p. 43. WRM provides no further evidence on this issue—there is no evidence in the record indicating how WRM believes the paging system should have operated, when security personnel should have received the page, or the timing of Afdahl's call and Rairdon's arrival at the fire. Thus, there is no evidence from which a trier of fact could determine that the paging system did not function properly on the day of the fire. *See Johnson v. Cambridge*, 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (quoting *Schact v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Accordingly, Siemens is entitled to summary judgment on this issue.

Dkt. No. 137 at 7. Additionally, it appears that Baldassarra's opinion regarding the paging system is based almost entirely on the "Donan Report" dated September 13, 2010, a document that was

6

available to him prior to his First Report. *See* Dkt. No. 156-1 at 6-7. For these reasons, the Court strikes this portion of the Supplemental Report, and Baldassarra may not testify regarding this opinion at trial.

### 3. Failure to Obtain a Construction Permit

Baldassarra's First Report states as follows:

> The Siemens proposal for a fire system at the Conservatory of Music building did specify in the scope of work that they would submit the design to the State Fire Marshal for permit, as dated August 22, 2002. That was not specified in the contract for Guerin Hall and was a contributing favor in the omission of the basement detectors. Had plans been submitted to the State for review, even for this voluntary installation, it is possible that the omission of the basement would have been raised.

Dkt. No. 45-1 at 6. During his deposition, the following exchange also took place:

> A. . . . But in the old project, for example, conservatory project included permits and submittals in the contract. And again, what would you expect, having signed a new contract and not finding out in – you know, at the end that you didn't get what you just got on the last project.
>
> Q: Okay. So you're – you're trying to – you're trying to compare two different contracts for two different buildings entered at two different times by the same two companies or the same two groups?
>
> A: Yes.

Dkt No. 108-2 at 52. Similarly, Baldassarra's Supplemental Report states that (1) Siemens' lack of responsibility in obtaining a permit was a deviation from the scope of work for prior Siemens projects with St. Mary's; (2) because St. Mary's was an unsophisticated customer, the requirement that it obtain the permits for this project would not have been apparent to St. Mary's; and (3) submittal of the drawings to the local authorities with an application for a permit would have precluded the design deficiencies with the project.

The Court finds that each of these opinions was expressed (albeit in different terms) in the First Report or at his deposition (and not objected to by Siemens). Thus, they are not really

7

"new opinions," just rearticulations of prior opinions. As such, the Court will not strike this section of Baldassarra's Supplemental Report.

        4.   *Failure to Prepare Accurate Drawings by Licensed Design Professionals*

According to Baldassarra's Supplemental Report, the project was poorly managed and lacked adequate supervision and communication. He also asserts that "[t]he failure to have accurate drawings prepared by a licensed design professional and to have those drawings submitted to the stakeholders resulted in lost opportunities to identify the areas of the building without smoke detection and allow a thorough discussion of the risks and costs of omission." Dkt. No. 156-1 at 11. These opinions appear to be based almost entirely on the fact that the plans for the project did not reflect the proper uses and sizes of the rooms in Guerin Hall. The inaccurate plans also caused issues for the electrical subcontractor. The existence of incorrect plans and the subsequent issues faced by the electrical subcontractor were noted in Baldassarra's First Report (Dkt. No. 45-1 at 6) and discussed during his deposition (during direct examination, and thus not objected to by Siemens) (*See*, e.g., Dkt. No. 108-2 at 54). Thus, the fact that Siemens designed inaccurate drawings, which led to issues for the electrical subcontractor, is not new, and the Court will not strike this portion of the opinion.

Baldassarra's recent realizations about these facts, however, are new. The Court thus strikes the following opinions from Baldassarra's Supplemental Report: (1) The project was poorly managed, with inadequate supervision, communication, and review, and (2) the failure to have accurate drawings prepared by a licensed design professional and to have those drawings submitted to the stakeholders resulted in lost opportunities to identify problems with the plans. Baldassarra is not permitted to testify regarding these opinions at trial.

### 5. *Smoke Detector Performance*

Baldassarra states in his Supplemental Report that a smoke detection system in the basement of Guerin Hall would have likely detected a fire within four minutes of ignition. Although Baldassarra claims that he relied on new items of discovery in reaching this conclusion, it is clear that this opinion is based on national testing standards that were available to him prior to his First Report. Dkt. No. 156-1 at 12. The Court thus strikes this portion of Baldassarra's Supplemental Report, and Baldassarra may not testify regarding this opinion at the trial.

### 6. *Hoffman's Report*

Lastly, Baldassarra identifies various issues he has with Hoffman's Report and statements made during Hoffman's deposition in his Supplemental Report.[1] It is undisputed that the Hoffman Report was produced on July 15, 2013, and the Hoffman deposition occurred on April 3, 2014, after Baldassarra authored his First Report. The Court also notes that the rebuttal opinions comply with the Magistrate Judge's order. In other words, the opinions are "limited to the basis upon which Siemens' expert has inadequately reached his opinion." Dkt. No. 132 at 2. The Court further notes that it is unlikely that the rebuttal opinions (which are mostly extraneous) will prejudice Siemens. For these reasons, the Court will not strike this section of Baldassarra's report. The Court, however, notes that to the extent Baldassarra's criticisms of the Hoffman Report and/or deposition, consist of statements or opinions that the Court has already stricken (as identified above), these statements and opinions are also stricken in the rebuttal context, as Baldassarra may not resurrect a stricken opinion as a rebuttal opinion.

---

[1] Again, to be clear, the Court expresses no opinion regarding whether WRM failed to meet the rebuttal deadline under Rule 26. Siemens did not object to the Magistrate Judge's ruling, and the Court will not now rehash those arguments.

### III. *DAUBERT* MOTION

Notwithstanding the foregoing, Siemens also moves to bar Baldassarra "from testifying at trial that the property damage to Guerin Hall would have been lessened if smoke detectors had been present in the basement of Guerin Hall at the time of the subject fire." *Daubert* Mot. at 1. It argues that WRM and Baldassarra have "no scientific or other reliable evidence that smoke detectors in the basement of Guerin Hall would have prevented any of the property damage for which it seeks recovery." *Id.* Further, according to Siemens, "Baldassarra is not an expert in fire modeling science." *Id.* The Court, however, is not persuaded by Siemens' arguments.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), established the standard for determining the admissibility of scientific evidence and the Federal Rules of Evidence were thereafter amended to reflect the law as set forth in *Daubert*. Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

At Baldassarra's deposition, the following exchange took place:

> Q: The statement that you offer, that because fire detection was not provided in the basement of Guerin Hall, the delay in detection caused a delay in notifying responsible persons from notifying the fire department, that opinion, I take it, is based upon the assumption that if there was a smoke detector in the basement of Guerin Hall, it would have sounded an alarm sooner than the alarm that, in fact, sounded?

> A: Of course, yes.
>
> Q: And when you say, "of course, yes," what do you mean by that?
>
> A: Well, to me, that's very obvious in the profession that I'm in.

Dkt. No. 108-2 at 10. Siemens asked no other questions (e.g., why the opinion is so obvious) regarding this particular statement. Siemens now argues that Baldassarra "has no factual, scientific or other reliable basis to support his opinion." *Daubert* Mot. at 5. Baldassarra, however, has an M.B.A. and a B.S. in Fire Protection and Safety Engineering. He is a professional engineer, and he is also certified through the Society of Fire Protection Engineers. Baldassarra has worked in the fire protection industry for more than forty years. He has also served on a number of committees in the industry, he has received several awards, he has had a number of articles published, and he has presented on a wide-range of fire-safety issues. Given Baldassarra's background, the Court finds that he is qualified to testify that the property damage to Guerin Hall would have been lessened if smoke detectors had been present in the basement of Guerin Hall at the time of the subject fire. Siemens may question Baldassarra further regarding the basis for his opinion at trial.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's motion to strike is **GRANTED IN PART AND DENIED IN PART** (Dkt. No. 163), and the Defendant's *Daubert* motion is **DENIED** (Dkt. No. 164).

SO ORDERED: 2/19/15

*/s/ William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.